**Fill in this information to identify the case:**

Debtor name McGeachy Holding LLC

United States Bankruptcy Court for the: EASTERN DISTRICT OF NORTH CAROLINA, RALEIGH DIVISION

Case number (if known) 5:26-bk-1995

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

02/20

McGeachy Holding LLC**'s Plan of Reorganization.**

**Background for Cases Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

See Addendum.

**B. Liquidation Analysis**

See Addendum.

**C. Ability to make future plan payments and operate without further reorganization**

See Addendum.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of McGeachy Holding LLC (the *Debtor*) from [Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for:

1 classes of priority claims;

5 classes of secured claims;

1 classes of non-priority unsecured claims; and

1 classes of equity security holders.

Non-priority unsecured creditors holding allowed claims will receive distributions as set forth in the Addendum. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** .................................. | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). |
| 2.02 | **Class 2** .................................. | The claim of United Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 3** .................................. | The claim of First Citizens Bank, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 4** .................................. | The claim of Landfall Condominium HOA, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 5** .................................. | The claim of Crossings at Morganton Association, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.06 | **Class 6** .................................. | The claim of Wynncrest HOA, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.07 | **Class 7** .................................. | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.08 | **Class 8** .................................. | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

3.01 **Unclassified claims** Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02 **Administrative expense claims** Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. See Addendum.

3.03 **Priority tax claims** Each holder of a priority tax claim will be paid in full. See Addendum.

3.04 **Statutory fees** Not applicable.

3.05 **Prospective quarterly fees** All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 1 claims shall be paid in full, in cash, as more particularly described in the Addendum. |
| Class 2 – **Secured claim of United Bank** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 2 claims shall be paid as more particularly described in the Addendum. |
| **Class 3 – Secured claim of First Citizens Bank** | ☒ Impaired<br>☐ Unimpaired | Any allowed Class 3 claims shall be paid as more particularly described in the Addendum. |
| Class 4 - **Secured claim of Landfall Condominium HOA Inc.** | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 4 claims shall be paid as more particularly described in the Addendum. |
| Class 5 - **Secured claim of Crossings at Morganton Condominium Association** | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 5 claims shall be paid as more particularly described in the Addendum. |
| Class 6 - **Wynncrest Homeowner's Association, Inc.** | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 6 claims shall be paid as more particularly described in the Addendum. |
| Class 7 - **Non-priority unsecured creditors** | ☐ Impaired<br>☒ Unimpaired | Any allowed Class 7 claims shall be paid as more particularly described in the Addendum. |
| Class 8 - **Equity security holders of the Debtor** | ☐ Impaired<br>☒ Unimpaired | Holders of equity interests in the Debtor shall retain their equity interests. |

## Article 5: Allowance and Disallowance of Claims

5.01 **Disputed Claim** A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 **Delay of distribution on a disputed claim** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03 **Settlement of disputed claims** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br>See Addendum. |
| | | (b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

| | | |
|---|---|---|
| 7.01 | Means of Implementation. | See Addendum. |

## Article 8: General Provision

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:<br>See Addendum. |
| 8.02 | **Effective Date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| [8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of North Carolina govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| [8.07 | **Corporate Governance** | See Addendum. |
| [8.08 | **Retention of Jurisdiction** | See Addendum. |

## Article 9: Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## Article 10: Other Provisions

[Insert other provisions, as applicable.]

All provisions in the attached Addendum are incorporated herein by reference. To the extent there is a conflict between the language in the Addendum and the language in this Form 425A, the language in the Addendum shall control.

Respectfully submitted,

**X** s/Donovan McGeachy
[Signature of the Plan Proponent]

Donovan McGeachy
[Printed name]

**X** s/Joseph A. Bledsoe, III
[Signature of the Attorney for the Plan Proponent]

Joseph A. Bledsoe, III 19817
[Printed name]

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

**IN RE:**

**MCGEACHY HOLDING, LLC**

**DEBTOR.**

**CASE NO. 26-01995-5-JNC**
**CHAPTER 11**

# ADDENDUM TO PLAN OF REORGANIZATION

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

**IN RE:**

**MCGEACHY HOLDING, LLC** **CASE NO. 26-01995-5-JNC**
**CHAPTER 11**

**DEBTOR.**

**ADDENDUM TO PLAN OF REORGANIZATION**

Pursuant to the provisions of Sections 1189 and 1190 of Subchapter V of the Bankruptcy Code (11 U.S.C. §§ 1189 and 1190), the Debtor, McGeachy Holding, LLC, hereby submits the following Addendum to Plan of Reorganization ("Plan"):

## ARTICLE 1
## BACKGROUND

### A. Description and History of Debtor's Business

The Debtor is a North Carolina limited liability company that operates a rental property business in Fayetteville, North Carolina. The Debtor owns thirteen residential rental units comprised of single family homes and condos, as well as one commercial unit that is an event center. The majority of the Debtor's residential tenants are low income tenants who participate in the Section 8 housing program. The Debtor's real estate is located in Fayetteville, North Carolina. In the spring of 2005, one of the Debtor's condominium units located at 1841 Tryon Drive, Unit 7 was damaged in a fire that started in the common areas of the condo development. The unit was deemed to be a total loss, and the Debtor has an insurance claim against the condo association's insurance policy for the repairs. The Debtor has not received a timeline on the repairs to the unit or the status of the insurance claim and is contemplating whether litigation will be necessary to pursue the claim.

In addition to the rental properties, the Debtor operated a nightclub in Charlotte, North Carolina from approximately February to November of 2025. The Debtor shut down the nightclub after losing its leased space where it operated. Since terminating the night club, the Debtor has focused solely on its rental property business.

On or about August 21, 2025, First Citizens filed a lawsuit against the Debtor, asserting six causes of action against the Debtor arising from two promissory notes secured by real property, two unsecured promissory notes, a vehicle loan secured by the 2024 Tesa Cybertruck, and a claim for attorney's fees. A judgment was entered against the Debtor on these claims on December 23, 2025. First Citizens foreclosed

on two properties that were included in the judgment in January 2026, which reduced the amount of the judgment to approximately $282,309.00.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such claim would receive in a chapter 7 liquidation. A list of the Debtor's liabilities is attached as **Exhibit A** based upon claims filed as of the filing of this Plan or as scheduled by the Debtor.

A liquidation analysis is attached to the Plan as **Exhibit B**. The Debtor's assets consist of its rental properties as well as one vehicle used in the Debtor's operations. The Debtor believes that sufficient equity exists to pay all creditors in full if all of its rental properties were liquidated.

### C. Ability to Make Plan Payments and Operate Without Further Reorganization

The Plan Proponent must also show that they will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.

The Debtor has provided projected financial information attached hereto as **Exhibit C**. The Debtor has used the following assumptions in preparing Exhibit C:

The Debtor has shown its projected monthly income based on rents currently being paid by existing tenants or the Section 8 housing program. The Debtor's leases run for a one year term, although many tenants' leases are renewed for successive one year terms, in some cases without a new lease being prepared. If a tenant moves out, the Debtor will remarket the property at the current rental rate for that unit. As to existing properties with tenants, the Debtor has projected that rent increases of $50 per month will occur beginning with lease renewals occurring in 2027.

The Debtor has secured a new tenant for the 301 Warton Lane, Apartment 9 property that was previously vacant and will receive rental income for this unit beginning in August 2026 in the amount of $1,350.00.

The Debtor has been working on a prolonged clean out and repair of the 3323 Scotty Hill Road unit which was heavily damaged when the former tenant moved out. The property required new carpet, paint, plumbing repairs, and extensive cleaning. The Debtor expects to complete this work in August 2026 and have the unit rented beginning in September 2026, for a monthly rental rate of $1,200.00.

The Debtor also expects to begin receiving rent for the 3740 Owen Drive event

center property in October 2026, after certain HVAC repairs are made that are required before the tenant will commence its rent payments. The rental rate will be $4,000.00 per month.

Because of the uncertainty associated with the length of time needed to make repairs to the 1841 Tryon Drive Unit 7 property, the Debtor has not projected any income from this property until September 2028, or two years from the filing of this Plan, in order to allow six months for the insurance claim process to be resolved and eighteen months for the unit to be rebuilt.

Finally, the Debtor is not projecting any income from 612 Marshtree Lane, Unit 301, as Mr. McGeachy is presently occupying this property.

The Debtor has upcoming leases that will expire in 2026:

114 Wynncrest – October 2026
1184 Wrennwood Court – November 2026
571 Winding Creek Road, Unit B – November 2026
571 Winding Creek Road, Unit D – December 2026
7546 Branchwood Unit B – December 2026

For purposes of Exhibit C, the Debtor has assumed each of these tenants will remain and their lease will be renewed, based on their indication to the Debtor that they are not planning on moving out when their lease ends. Beginning with lease renewals in February and March 2027, the Debtor has projected that half of the tenants will renew their leases, and half of the tenants will elect to move out, and the space will be vacant for two months before a new tenant is put in place. For purposes of its projections, the Debtor has assumed the more expensive lease renewing will be vacated. With the next lease renewals in August 2027 and forward, the Debtor has projected a 10% vacancy rate in lieu of projecting the exact units that will be vacant, which equates to approximately one to two units being vacant each month during the term of the Plan.

Expenses.

Historically, the Debtor's largest expense, other than debt service, has been ongoing maintenance related to its rental properties. The Debtor also pays monthly condominium or homeowners dues for several of its rental property and makes monthly payments for insurance. The Debtor has projected its monthly HOA/Condo dues based upon their actual monthly amounts presently being paid. Beginning in January of each year, the Debtor has projected that these dues will increase 3%.

The Debtor has projected its monthly insurance costs based upon what it is actually paying at the time of filing this Plan. The Debtor has insurance through two

insurance companies, and makes monthly premium payments. The Debtor has projected that its insurance policies will increase 3% each year going forward when the policies renew in June of each successive year.

The Debtor has projected its property taxes based upon the 2025 tax bills. The Debtor has not projected an increase in its property taxes year over year.

The Debtor typically deals with three types of maintenance requests or needs. First, the Debtor responds to tenants' routine maintenance requests on an as needed basis. These repairs primarily address ongoing wear and tear at its properties. For purposes of these maintenance costs, the Debtor has projected a monthly maintenance expense of $2,750.00 per month, based on prior averages of the cost of ongoing maintenance. The Debtor expects declining maintenance going forward as major repairs have been completed over the past several months.

Second, when a tenant vacates a unit at the end of the lease or otherwise, the Debtor must often clean out the unit and make improvements such as repainting or recarpeting the unit, in order to prepare the unit for a new tenant. This cost can vary widely, depending on whether the prior tenant damaged the unit, how long the prior tenant lived in the unit, or whether major ticket items such as appliances need to be replaced. Historically, the Debtor has to perform this type of maintenance four times a year. As a result, the Debtor has projected a total maintenance expense for cleaning out and repairing units for re-renting of $3,000. For purposes of Exhibit C, the Debtor has assumed this will occur in March and April 2027, based upon the hypothetical non-renewals assumed above. Beginning in Year 2 of the projections, the Debtor has assumed four major cleanouts will be needed each year.

Finally, the Debtor has capital improvements or large ticket items that will need to be replaced as the properties continue to age, or when significant damage is done by a tenant. In the last several months, the Debtor has needed to replace several HVAC units, which can cost between $6,000.00 to $7,000.00 per unit to purchase and install the unit. The Debtor has recently had to replace two HVAC units. These large, capital repairs are an ongoing expense and the Debtor estimates having to replace two units per year, beginning in the second half of 2027, with an annual projected expense of $6,000.00. In addition, the Debtor needs to replace the HVAC unit at Owen Drive, which is anticipated to cost $6,800.00 given the larger space.

Plan Payments. The Debtor has projected its Plan payments based upon the payments being proposed in this Plan, and has assumed that payments will commence in November 2026.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## ARTICLE 2
## DEFINITIONS

1. "ADMINISTRATIVE CLAIM" or "ADMINISTRATIVE EXPENSE CLAIM" shall mean any Claim allowed under 11 U.S.C. § 503(b) and entitled to priority pursuant to 11 U.S.C. § 507(a)(1) that has not been paid by the Debtor including, without limitation, any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtor's business, any indebtedness or obligations incurred or assumed by the Debtor, as Debtor-in-Possession, during the pendency of the above-captioned case, including, without limitation, for the acquisition or lease of property or an interest in property or the performance of services, any compensation and reimbursement of expenses to the extent allowed by Final Order under 11 U.S.C. §§ 330 or 503, and any fees or charges assessed against the Estate of the Debtor under 28 U.S.C. § 1930 or under the United States Code. "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under 11 U.S.C. § 507(a)(1).

2. "ADMINISTRATIVE CLAIM BAR DATE" shall have the meaning set forth in Article 5 of this Plan.

3. "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

4. "BANKRUPTCY CAUSES OF ACTION" shall mean any Claim or Cause of Action which may be asserted by the Debtor or the Debtor-in-Possession under 11 U.S.C. §§ 541, 542, 543, 544, 546, 547, 548, 549, 550, or 553.

5. "BANKRUPTCY CODE" or "CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

6. "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as applicable to the chapter 11 cases, promulgated under 28 U.S.C. § 2075, as well as the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of North Carolina.

7. "CLAIM" shall mean a duly listed or a timely filed Claim. If a conflict

arises between a filed claim and the treatment of the Claim set forth in the Plan, the treatment set forth in the Plan shall control.

8. "CLAIMS BAR DATE" means such period of limitation as may be specifically fixed by an Order of the Bankruptcy Court for the filing of certain Claims.

9. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan pursuant to 11 U.S.C. § 1123(a)(1).

10. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

11. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

12. "CONFIRMATION ORDER" shall mean the Order of the Court confirming this Plan, as proposed and amended.

13. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina.

14. "CREDITORS" shall mean all those persons and entities holding Claims against the Debtor for debts, liabilities, demand or claims of any character whatsoever.

15. "DEBTOR" shall mean MCGEACHY HOLDING, LLC, as identified on the first page of this Plan.

16. "DISALLOWED" shall mean, with respect to any Claim, a Claim (i) proof of which is not filed prior to the applicable Claims Bar Date, or (ii) which is not listed on the Debtor's Schedules, or (iii) which is listed on the Debtor's Schedules as disputed, contingent, or unliquidated, or (iv) which is listed on the Debtor's Schedules as having a value of $0.00. Any Disallowed Claim shall not be entitled to any distribution under this Plan on account of such Claim, and such Disallowed Claim shall be disregarded for all purposes.

17. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent, unliquidated, or for an "unknown" or $0.00 amount, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order. For the avoidance of doubt, if no proof of Claim has been filed by the applicable Claims Bar Date and the Claim (i) is not listed on the Debtor's Schedules, or (ii) has been or is hereafter listed on the Debtor's Schedules as

disputed, contingent, unliquidated, or having a value of $0.00, then such Claim shall be Disallowed and shall be disregarded for all purposes.

18. “DISTRIBUTION DATE” shall mean the date on which distributions are to be made under the Debtor’s Plan.

19. “FINAL DECREE” shall mean the order of this Court pursuant to Federal Rule of Bankruptcy Procedure 3022 closing this Bankruptcy Case.

20. “FINAL ORDER” shall mean an order of the Court that has been entered and either (a) the time for appeal from such Order has expired; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21. “GENERAL UNSECURED CLAIM” shall mean any claim, whether or not liquidated or contingent, other than a Priority Claim, Administrative Claim, or Secured Claim.

22. “IMPAIRED” shall mean those Classes of Creditors whose Claims or Interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their Claims or Interests in Cash as of the Effective Date of the Plan.

23. “PETITION DATE” shall mean May 1, 2026, the date upon which the Debtor filed the Voluntary Petition seeking relief under chapter 11 of the Bankruptcy Code.

24. “PLAN” shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25. “PRIORITY CLAIM” shall mean any claim to the extent entitled to priority in payment under 11 U.S.C. § 507.

26. PRIORITY TAX CLAIM” shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

27. “PRO-RATA” shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28. “REORGANIZED DEBTOR” shall mean the Debtor, as reorganized under the terms of this Plan and revested with the property which was formerly

property of the estate, as provided by 11 U.S.C. § 1141(b).

29. "SECURED CLAIM" shall mean a Claim (a) secured by a Lien on property in which the Estate of the Debtor against which the Claim is asserted has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Final Order entered by the Court, to the extent of the value of the Creditor's Interest in the Estate's interest in such property as determined pursuant to 11 U.S.C. § 506(a); (b) subject to setoff pursuant to 11 U.S.C. § 553, to the extent of the value of the property subject to setoff; or (c) otherwise Allowed pursuant to the Plan as a Secured Claim.

30. "SECURED CREDITORS" shall mean all Creditors who hold a lien, security interest or any other encumbrances that have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

31. "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

32. "TRUSTEE" shall mean the Subchapter V trustee appointed in this case pursuant to 11 U.S.C. § 1183(a), Kathleen O'Malley.

33. "UNIMPAIRED" means any Claim or Interest that is not designated as Impaired.

## ARTICLE 3
## SUMMARY OF PLAN

The Debtor's liabilities will be paid from cash on hand and continued revenue earned from its rental property operations, according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be established according to the treatment of each respective creditor.

## ARTICLE 4
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A. Summary of Classification

As required by the Bankruptcy Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. Claims in Classes that are unimpaired are deemed to have accepted the Plan and are not entitled to vote. Holders of Claims in Classes that are impaired are

entitled to vote and are therefore being solicited to vote to accept or reject the Plan.

### B. Classification of Claims and Interests Generally

A Claim or Interest is in a particular Class for the purposes of voting on, and receiving distributions pursuant to, the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released, withdrawn, or otherwise settled before the Effective Date. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. Any Class of Claims that, as of the date of the Confirmation Hearing of the Plan, is not occupied by an Allowed Claim, or a Claim temporarily Allowed under Bankruptcy Rule 3018, and for which, on the Effective Date, there are no Disputed Claims in such Class pending, shall be deemed deleted from the Plan for all purposes.

### C. Index of Classes

The chart below lists each Class of Creditors, and a detailed description of each Class and its treatment following in Articles 5 and 6.

| Class No. | Class/Type | Impairment | Voting Rights |
|---|---|---|---|
| N/A | Administrative Claim | N/A | Not entitled to vote |
| N/A | Priority Tax Claims | Unimpaired | Not entitled to vote |
| Class 1 | Priority Claims | Unimpaired | Not entitled to vote |
| Class 2 | United Bank | Impaired | Entitled to vote |
| Class 3 | First Citizens Bank | Impaired | Entitled to vote |
| Class 4 | Landfall Condominium HOA | Impaired | Entitled to vote |
| Class 5 | Crossings at Morganton HOA | Impaired | Entitled to vote |
| Class 6 | Wynncrest HOA | Impaired | Entitled to vote |
| Class 7 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 8 | Equity Security Holders | Unimpaired | Not entitled to vote |

## ARTICLE 5
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### A. Administrative Expenses Claims

Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan or as otherwise agreed. The Debtor proposes to pay these claims in full from the Debtor's projected disposable income and

cash on hand. The Debtor anticipates the only administrative claims will be those of the Debtor's professionals and the Trustee.

EXCEPT FOR COURT APPROVED PROFESSIONALS AND THE TRUSTEE, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN THIRTY (30) DAYS OF THE DATE OF THE CONFIRMATION ORDER (THE "ADMINISTRATIVE CLAIM BAR DATE"). OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE DEBTOR AT ANY TIME.

**A. Priority Tax Claims**

Each holder of a priority tax claim will be paid in full, through quarterly payments over a period not exceeding five (5) years from the Petition Date, with payments commencing on the fifteenth day of January 15, April 15, July 15, or October 15, the first of which occurs after the Effective Date of the Plan, and quarterly thereafter on each January 15, April 15, July 15, and October 15 until paid, with interest at the statutory rate. The Debtor may elect to pay these claims in full at any time following the Effective Date. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim. Any Claim or demand for any such penalty will be subject to treatment as a General Unsecured Claim, to the extent allowed.

## ARTICLE 6
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. Article 5 above describes the treatment of Administrative Claims and Priority Tax Claims. For the purposes of this Plan, holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code, provided that (a) if the Plan is confirmed, recovery will be limited to the amount provided by the Plan; and (b) notwithstanding the classification and treatment of Claims set forth herein, any holder of an Allowed Claim may agree to less favorable treatment than that set forth herein, in which case such holder may be paid in accordance with such agreement:

**Class 1 – PRIORITY NON-TAX CLAIMS:**

On the Effective Date, the Holders of Allowed Claims in Class 1 shall receive (a) all amounts to which such Holder is entitled on account of such allowed Claim on the later of (i) the Effective Date or (ii) the date when such allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable

treatment as is agreed upon by the Debtor and the Holder of such allowed Priority Non-Tax Claim. The Debtor does not believe there are any claims in this class.

**CLASS 2 – UNITED BANK:**

1. Description of Class. The Debtor has three loans with United Bank, further described as follows:

a. Loan No. The Debtor entered into a promissory note in the original amount of $500,000.00 dated December 13, 2023, secured by eight of the Debtor's properties. The Debtor estimates that United Bank was owed $482,725.46 on the Petition Date as to this obligation.

b. Loan No. The Debtor entered into a promissory note in the original amount of $270,000.00 dated October 24, 2023, secured by two of the Debtor's properties. The Debtor estimates that United Bank was owed $257,901.58 on the Petition Date as to this obligation.

c. Loan No. The Debtor entered into a promissory note in the original amount of $252,700.00 dated December 8, 2021, secured by three of the Debtor's properties. The Debtor estimates that United Bank was owed $225,039.00 on the Petition Date as to this obligation.

It appears that the three loans with United Bank are cross collateralized.

2. Impairment. This class is impaired.

3. Treatment. Each of the three obligations with United Bank shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date as shown by any claim filed by United Bank or absent the filing of a claim, the amount scheduled by the Debtor; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest on the claim; plus (c) costs and expenses allowed pursuant to Section 506(b); less (d) all post-petition payments. United Bank shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claims are paid as outlined herein. All obligations which were cross collateralized prior to the Petition Date shall retain their cross-collateralization under the Plan to the extent of their respective liens. United Bank shall provide an updated payoff for each claim as of the Effective Date (the "Effective Date Balance"). The Effective Date Balance for each loan shall be amortized over thirty years, with interest at a rate of 7.25% per annum from and after the Effective Date. The Debtor shall make monthly payments of principal and interest on each loan to United Bank, commencing on the fifteenth day of the first full month following the Effective Date and continuing on the 15th of each month thereafter. The final payment of all

outstanding principal and interest shall be due with the 120th monthly payment. Each monthly payment shall be applied first to accrued interest on such claim and then to principal. During the term of repayment, the Debtor shall keep United Bank's collateral insured, with United Bank named as the loss payee, and shall pay all ad valorem taxes directly to Cumberland County when due, except for those paid through this Plan.

In the event that the Debtor sells any of the collateral security the claim of United Bank, the proceeds of sale shall be used to satisfy the loan securing such property prior to being applied to any of the other United Bank loans. Upon the sale of any property, the monthly payment to United Bank shall be re-amortized over the remaining term of the loan.

**Class 3 – FIRST CITIZENS BANK ("First Citizens")**:

1. Description of Class. The Debtor had multiple obligations with First Citizens Bank. On December 23, 2025, First Citizens obtained a judgment against the Debtor in the total amount of $942,175.00, arising from seven claims for relief (Claims 11 to 17 in the Complaint). On April 9, 2026, First Citizens filed a Receipt and Partial Satisfaction of Judgment, acknowledging receipt of payments totaling $659,865.22, arising from the foreclosure of two properties encumbered by deeds of trust in favor of First Citizens as well as two partial payments made towards the Cyber Truck loan. This obligation is secured by a lien on a Tesla Cybertruck and a judgment lien on all of the Debtor's real estate. The Debtor estimates that First Citizens was owed $282,309.78 on the Petition Date as to this obligation.

2. Impairment. This class is impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date as shown by any claim filed by First Citizens or absent the filing of a claim, the amount scheduled by the Debtor; plus (b) interest accrued through the Effective Date at the rate granted in the judgment; less (c) all post-petition payments. First Citizens shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid as outlined herein. This obligation shall be amortized over thirty years, with interest at a rate of 7.25% per annum from and after the Effective Date. The Debtor shall make monthly payments of principal and interest commencing on the fifteenth day of the first full month following the Effective Date and continuing on the 15th of each month thereafter. The final payment of all outstanding principal and interest shall be due with the 120th monthly payment. Each monthly payment shall be applied first to accrued interest on such claim and then to principal.

**Class 4 – LANDFALL CONDOMINIUM HOMEOWNERS ASSOCIATION**

**INC. ("Landfall HOA"):**

1. Description of Class. This Class consists of the past due condominium association dues owed by the Debtor to Landfall HOA for the property located at 612 Marshtree Lane, Unit 301. Landfall HOA filed a claim of lien in 2025 to prefect its lien on this property. Landfall HOA filed claim number 1 in the amount of $2,849.57.

2. Impairment. This class is impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date as shown by any claim filed by Landfall HOA; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest on the claim; plus (c) costs and expenses allowed pursuant to Section 506(b); less (d) all post-petition payments. Landfall HOA shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid as outlined herein. This obligation shall be amortized over five years, with interest at a rate of 7.25% per annum from and after the Effective Date. The Debtor shall make monthly payments of principal and interest to Landfall HOA, commencing on the fifteenth day of the first full month following the Effective Date and continuing on the 15th of each month thereafter. Each monthly payment shall be applied first to accrued interest on such claim and then to principal.

**Class 5 – CROSSINGS AT MORGANTON CONDOMINIUM ASSOCIATION ("Crossings Association"):**

1. Description of Class. This Class consists of the past due condominium association dues owed by the Debtor to Crossings Association for the property located at 301 Warton Lane, Unit 3. Crossings Association filed two liens with the Cumberland County Superior Court in 2025 to perfect a lien on this property. The Debtor estimates that Crossings Association was owed $8,421.70 on the petition date.

2. Impairment. This class is impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date as shown by any claim filed by Crossings Association, or if no claim is filed, in the amount scheduled by the Debtor; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest on the claim; plus (c) costs and expenses allowed pursuant to Section 506(b); less (d) all post-petition payments. Crossings Association shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid as outlined herein. This obligation shall be amortized over five years, with interest at a rate of 7.25% per annum from and after the Effective Date. The Debtor shall

make monthly payments of principal and interest to Crossings Association, commencing on the fifteenth day of the first full month following the Effective Date and continuing on the 15th of each month thereafter. Each monthly payment shall be applied first to accrued interest on such claim and then to principal.

**Class 6 – WYNNCREST HOMEOWNER'S ASSOCIATION, INC. ("Wynncrest HOA"):**

1. Description of Class. This Class consists of the past due condominium association dues owed by the Debtor to Wynncrest HOA for the property located at 114 Wynncrest. Wynncrest HOA filed a lien with the Cumberland County Superior Court in 2025 to perfect a lien on this property. The Debtor estimates that Wynncrest HOA was owed $4,320.00 on the petition date.

2. Impairment. This class is impaired.

3. Treatment. This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding balance due on the Petition Date as shown by any claim filed by Wynncrest HOA, or if no claim is filed, in the amount scheduled by the Debtor; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest on the claim; plus (c) costs and expenses allowed pursuant to Section 506(b); less (d) all post-petition payments. Wynncrest HOA shall retain its liens with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid as outlined herein. This obligation shall be amortized over five years, with interest at a rate of 7.25% per annum from and after the Effective Date. The Debtor shall make monthly payments of principal and interest to Wynncrest HOA, commencing on the fifteenth day of the first full month following the Effective Date and continuing on the 15th of each month thereafter. Each monthly payment shall be applied first to accrued interest on such claim and then to principal.

**Class 7 – NON-PRIORITY GENERAL UNSECURED CREDITORS:**

1. Description of Class. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's Schedules or as otherwise approved by the Court. As of the date of the filing of this Plan, the deadline for filing proofs of claim has not yet expired. The Debtor estimates that claims within this Class are approximately $47,880.16.

2. Impairment. This class will be impaired.

3. Treatment. Allowed Claims in this Class shall be paid in full over a period of five (5) years, payable in quarterly installments of $798.00. Payments shall commence on January 15, 2027, and continue on the 15th day of the first month of

each quarter thereafter.

**Class 6 – EQUITY SECURITY HOLDERS:**

1. Description of Class. This class consists of the Debtor's sole member, Donovan McGeachy.

2. Impairment. This class will be unimpaired.

3. Treatment. Equity security holders shall retain their interests in the Debtor.

## ARTICLE 7
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

A. Claims Subject to Objection. All Claims and security interests listed herein are, unless expressly accepted or consented to herein, subject to objections by the Debtor or any party in interest. All Disputed Claims shall be litigated to final order, settled, or withdrawn. The Debtor shall have the authority to settle Disputed Claims without approval of the Court.

B. Claims Objection Bar Date. Unless a different date is set by order of the Court, all objections to Claims shall be filed by the later of (i) 60 days after the Effective Date, (ii) 30 days after the deadline for proofs of claim (September 2, 2026 for non governmental creditors, and October 28, 2026 for governmental creditors), or (iii) such later date as the Court may establish upon a motion by the Debtor, which may be approved without notice to any party-in-interest or hearing.

C. Delay of Distribution on a Disputed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order. For purposes of making distributions to creditors when distributions are to be made pro rata, all Disputed Claims shall be counted based on the face amount of the claim filed by such creditor. The distribution that would be made to any creditor with a Disputed Claim shall be held by the Debtor in escrow pending resolution of such claim. Upon the allowance of a Disputed Claim in any amount other than $0.00, the Debtor will disburse the appropriate pro rata share of distributions held to that creditor within ten days. If the Claim is disallowed in full or in such amount that the other unsecured creditors are entitled to a share of the funds held, the Debtor shall include those funds in the next scheduled disbursement to creditors.

## ARTICLE 8
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor specifically assumes all leases for which it is the landlord.

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 8 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

## ARTICLE 9
## MEANS FOR IMPLEMENTATION OF THE PLAN

A. The Debtor shall make payments under the Plan from cash on hand and projected disposable income obtained from continued operations of its rental property business. The Debtor shall deposit all proceeds into a designated bank account and disburse all funds in accordance with the terms of this Plan.

B. Authority of Reorganized Debtor. After the Effective Date, the Debtor may operate and use, acquire, sell, transfer, convey, or dispose of property without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order. Specifically, the Reorganized Debtor shall no longer need approval from the Bankruptcy Court, the Bankruptcy Administrator, or the Trustee, in order to undertake any transaction for which Court approval was needed pursuant to Sections 363 or 364 of the Bankruptcy Code prior to the Effective Date, including but not limited to sales of real or personal property.

C. Pro Rata Distributions. Whenever the Plan calls for distributions to be made to claims within a class pro rata, no distributions shall be made to creditors within such class until (i) the deadline for filing objections to claims within such class has past; (ii) all objections to claims in the class have been resolved by a Final Order; (iii) the deadline for creditors to file requests for attorney's fees has past and all applications have been resolved by a Final Order; and (iv) in the case of any non-priority claims, the deadline for filing deficiency claims and claims arising from the rejection of executory contracts and unexpired leases has past.

D. Proceeds of Bankruptcy Causes of Action. Funds received or recovered from any avoidance action(s) shall be distributed to creditors according to the priorities of the Bankruptcy Code, after payment of all applicable costs associated with the pursuit of such avoidance action(s), which shall be paid in full before the distribution of such proceeds. At this time and after investigation of the same, the Debtor does not contemplate filing any such actions.

E. The Debtor will execute and deliver all documentation to the Court and

to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

F. Penalties, Late Charges, and Attorney's Fees. Except as expressly stated in the Plan, or allowed by a Final Order of the Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date. No attorney's fees or expenses shall be paid with respect to any secured or unsecured claim unless those attorney's fees or expenses have been allowed by a Final Order of the Court after compliance with E.D.N.C. LBR 2016-2.

G. Application of Plan Payments. Confirmation of the Plan shall have the effect of decelerating, and treat as a current, non-default loan as of the Effective Date in the amount owed as of the Effective Date as calculated in the respective treatment for each creditor. All payments made by the Debtor under this Plan shall be applied as indicated in the respective treatment for each creditor as between principal and interest, or if no such application of payments is specified, then payments shall be applied first to accrued interest and then to principal on a monthly basis according to the claim balance and amortization schedule proposed for each such creditor. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or servicers of any claims secured by liens, mortgagees, and/or deeds of trust to apply payments in the manner set forth in the Plan and in accordance with Section 524(i) of the Code, which is expressly incorporated herein. Confirmation of the Plan shall not relieve secured creditors of any stricter duties they may have under applicable state or federal law regarding the application of payments received from the Debtor regarding the timing of application of Plan payments.

H. Exemption from Transfer Taxes. Pursuant to Section 1146(a), the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax. Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and except for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

I. Deadline and Procedure for Deficiency Claims. Any secured creditor asserting a deficiency claim that has not been allowed by the Court pursuant to a separate Order or specifically established in this Plan, shall file a proof of claim

within thirty (30) days after the determination that such deficiency claim exists, unless another time is specifically given for such creditor, including an itemization of the principal, interest, and other costs, or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. In the event the Debtor obtains its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Debtor of any such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Debtor in a writing containing the same information required pursuant to § 501 and Bankruptcy Rule 3001.

J. Procedure For Approval of Payment to Court Approved Professionals. Professionals employed by the Court shall not be subject to the fee application process for services rendered post-confirmation in furtherance of the confirmed Plan.

K. Notices After the Effective Date. Following the Effective Date, the Debtor shall no longer be required to serve or otherwise provide notice of any motions, applications, or other pleadings filed in this case on the following parties (i) any creditor or claimant which has been paid in full in this case and thus is no longer a creditor of the Debtor; (ii) any creditor or claimant which has had their claim disallowed in full by a Final Order; or (iii) any creditor or claimant who has had their claim disallowed as a result of a returned or unclaimed payment in accordance with Article VIII.

L. Release of Liens on Vehicles. Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property for which the certificate of title is in the possession of the secured creditor, the secured creditor shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the North Carolina Department of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such Secured Creditor to comply with this provision, which shall be enforced by either the filing of a contested matter or adversary proceeding with the Court prior to, or after, the closing of the Bankruptcy Case. The Debtor specifically reserves the right to reopen the Bankruptcy Case under § 350 to pursue any and all rights and Claims provided for herein.

M. Release of Liens on Real Property. Pursuant to N.C. Gen. Stat. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable county a satisfaction of its security interest and mail or deliver the

recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by § 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured creditor to comply with this provision, which shall be enforced in a proceeding filed with the Court prior to, or after, the closing of the Bankruptcy Case. The Debtor specifically reserves the right to reopen the Bankruptcy Case under § 350(b) of the Bankruptcy Code to pursue the rights and claims provided for herein including all remedies for damages and attorneys' fees under applicable state and federal statutes.

N. All fee applications (with the exception of applications under 11U.S.C. § 506(c), fee applications by counsel for the Debtor, and fee applications by the Trustee), will be filed with the Court within thirty (30) days of the Confirmation Date; provided however, that the Debtor retains the right to extend this deadline upon a showing of cause, and the Debtor may object or otherwise pursue any claims against Secured Creditors relating to the payoff and/or satisfaction of their Secured Claims at any time.

O. The statute of limitations of any and all Bankruptcy Causes of Action, and actions in State or Federal Court, not hereinbefore filed, shall be governed by their respective statutes of limitations, 11 U.S.C. § 108(a)(2), or 11 U.S.C. § 546(a)(1)(A), whichever deadline shall be later.

P. Revesting of Assets. The revesting of assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan. As of the Effective Date, the Plan shall revest in the Debtor all of the assets of the Debtor and without further documentation, all of the assets and assumed liabilities of the Debtor, together with all of the related rights, powers, obligations and duties of the Debtor as provided by the Bankruptcy Code, this Plan, all orders of the Court, all equitable rights and all laws shall be transferred to the Reorganized Debtor as a successor of the Debtor in all things.

Q. Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

R. Within fourteen (14) days of substantial consummation of the Plan, as defined by § 1101(2), the Debtor shall file with the Court and serve upon the Trustee,

the Bankruptcy Administrator, and all parties in interest notice of such substantial consummation in accordance with 11 U.S.C. § 1183(c)(2). Upon the filing of the notice of substantial consummation, the service of the Trustee shall terminate pursuant to 11 U.S.C. § 1183(c)(1) and the Trustee shall make a final report and file a final account of the administration of the estate within seven (7) days of the notice filed under § 1183(c)(2). Within thirty (30) days of substantial consummation, the Debtor shall file a final report, in a format prescribed by the Bankruptcy Administrator, reflecting the payments made for all costs of administration and each Class of creditors, and a motion for the entry of a Final Decree pursuant to Bankruptcy Rule 3022.

S. Cancellation of Liens. Except for those liens of secured creditors specifically retained in this Plan, any and all prepetition liens encumbering any of the Debtor' assets, whether deeds of trust, UCC-1 financing statements, tax liens, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order. The Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

## ARTICLE 10
## PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A. Preservation of Claims and Avoidance Actions Generally. Nothing contained in this Plan or the Confirmation Order shall have and is not intended to have, any *res judicata* or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Confirmation Order, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to any and all prepetition and postpetition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, including any and all rights to assert and pursue all avoidance actions, preference actions, as well as any other actions pursuant to §§ 545, 546, 547, 548, 550, and 542, including without limitation, actions to turnover of assets of the

bankruptcy estate, recover accounts receivable, and/or invalidate setoffs. All transactions avoided or otherwise entitled to be set aside pursuant to §§ 544, 547, 548, or 549, if any, shall be preserved for the benefit of the bankruptcy estates pursuant to § 551 and applicable case law. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust but shall instead be paid to the Disbursing Agent for distribution to creditors.

B. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to §§ 510(c), 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the estate pursuant to § 551 and applicable case law. All litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries shall be treated as an Administrative Claim under Article 5 above.

C. Preservation of § 506(c) Claims. Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## ARTICLE 11
## PROVISIONS GOVERNING DISTRIBUTIONS

A. Payments By Debtor. The Debtor shall make all payments to creditors under the Plan, regardless of whether the Plan is confirmed pursuant to 11 U.S.C. §1191(a) or §1191(b). The Subchapter V Trustee shall make no distributions under the terms of the Plan.

B. Delivery of Distributions in General. Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, then (iii) at the addresses reflected in the Debtor's schedules of liabilities.

C. Cure Period. The failure by Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes. Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute

conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

D. Returned or Unclaimed Payments. Unless otherwise notified in writing, the Debtor or Trustee as applicable, shall make distributions under this Plan to creditors at (i) the address listed in such creditor's Proof of Claim filed with the Court; or (ii) at the address listed on the Debtor's Schedules for such creditor. In the event any payment made to a creditor remains unclaimed or any check remains uncashed for a period of ninety (90) days, or any payment is returned as not deliverable due to an insufficient address, the Debtor or Trustee shall be entitled to void such check or stop payment on such check. In the event of any returned payment or uncashed payment, the Debtor or Trustee shall make a good faith attempt to locate the recipient, but if such attempt fails, then the Debtor or Trustee shall not attempt to make any further distributions toward such claimant, and such claimant shall not be entitled to any future distributions under the Plan. Instead, such funds shall be distributed to the remaining creditors according to the manner set forth for distributions under this Plan and such creditor shall be treated as if their claim had been disallowed in the case.

E. De Minimis Distributions. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an Allowed Claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

## ARTICLE 12
## ACCEPTANCE OF REJECTION OF PLAN AND CRAMDOWN

A. Each Impaired Class Entitled to Vote Separately. Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. Acceptance by a Class of Creditors. Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two- thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. Claimants Entitled to Vote. Holders of Impaired Claims shall be entitled to vote if:

1. Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated, or disputed, and as to which no proof of claim has been filed. The claim

shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's Schedules;

2. Such claim has been filed against the Debtor or listed on the Debtor's Schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018; or

3. Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

4. Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. Confirmation Hearing. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. Acceptances Necessary to Confirm the Plan. At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. Confirmation of Plan Without Necessary Acceptances. Section 1191(b) of the Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all Impaired Classes. In order to be confirmed without the requisite number of acceptances of each Impaired class, the Court must find that at least one Impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such Impaired class. In the event that any Impaired class votes against the Plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Article 12, Paragraph G, for confirmation pursuant to the "cramdown" provisions of § 1191(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1191(c).

G. Cramdown. With respect to any class of creditors Impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are Impaired under the Plan and that the Court confirm the Plan without such acceptances by the said Impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any Secured Creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the Confirmation Hearing.

## ARTICLE 13
## EFFECT OF CONFIRMATION

Injunction. From and after the Confirmation Date, except as otherwise provided in Sections 1141(d)(3), 1192, the Plan, or the Confirmation Order, all holders of "Claims" (including without limitation Secured Claims, General Unsecured Claims, all Priority Claims and any other claim, equity interest, or other debt or liability) against the Debtor and the Debtor-in-Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Debtor's assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Debtor's assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan. Notwithstanding the foregoing, except as otherwise expressly provided in the Plan, the Plan does not release or waive any claims the Debtor may have against any party in interest.

## ARTICLE 14
## DISCHARGE

A. Consensual Confirmation Under § 1191(a). As § 1141(d)(5) does not apply to a case under Subchapter V, see § 1181(a), if the Plan is confirmed consensually with the acceptance of all Impaired Classes, then upon entry of the Confirmation Order the Debtor will be discharged from any debt that arose before confirmation of the Plan pursuant to § 1141(d)(1)(A) of the Bankruptcy Code. Notwithstanding the foregoing, a discharge under § 1141(d) does not discharge the Debtor from any debt excepted from discharge under section 523 of the Bankruptcy Code.

B. Non-Consensual Confirmation Under § 1191(b). If the Plan is confirmed non-consensually without the acceptance of all Impaired Classes, confirmation of the Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on completion of all payments due to the unsecured creditors, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will file a motion for entry of discharge. Said Motion will be noticed to all interested parties, and all parties shall have the right to file timely objections with the Court. A hearing will be held before the Court with regards to any such motion for entry of discharge order.

C. Upon granting of such a discharge, the Debtor will be discharged from any debt that arose before confirmation of this Plan, whether or not (i) a proof of claim based on such debt is filed or deemed file, (ii) such claim is allowed, or (iii) the holder of such claim has accepted the Plan. Except for the obligations imposed by the Plan, the distributions and rights that are provided in the Plan will be in complete satisfaction, discharge and release of all (i) claims, liabilities and obligations of the Debtor, (ii) liens on the Debtor's property, whether known or unknown, and (iii) causes of action, directly or derivatively through the Debtor, based on the same subject matter as any claim or liability.

## ARTICLE 15
## APPLICATION OF PLAN PAYMENTS

A. In the event that a creditor is entitled to costs and/or attorney's fees post-petition under Section 506(b) of the Bankruptcy Code, such creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim.

B. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages, and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

C. Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## ARTICLE 16
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of these proceedings pursuant to and for the

purposes of Sections 105(a) and 1193 of the Bankruptcy Code and for, without limitation, the following purposes, inter alia:

1. To determine any and all objections to the allowance of Claims and/or interests;

2. To determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. To determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any Claim resulting therefrom;

4. To determine all controversies and disputes arising under or in connection with the Plan;

5. To determine all adversary proceedings and litigated matters pending on the Confirmation Date or permitted to be filed or commenced pursuant to this Plan;

6. To hear and determine any and all claims or actions now pending or to be brought by the Debtor pursuant to the Debtor's enforcement and/or avoiding powers retained and authorized under this Plan;

7. To effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the estate;

8. To determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

9. To determine all disputes regarding property of the Debtor, the Reorganized Debtor, or the estate;

10. To establish and adjust procedures for the orderly administration of the estate;

11. To determine matters that are subject to proceedings duly removed to the Court;

12. To interpret and enforce the Plan and to determine compliance with the terms of the confirmed Plan;

13. To correct any defect or omission, or to reconcile any inconsistency in

this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan; and

14. To modify this Plan after confirmation.

Respectfully submitted, this the 29th day of July, 2026.

MCGEACHY HOLDING, LLC

By: s/Donovan McGeachy
Donovan McGeachy, Managing Member

s/Joseph A. Bledsoe, III
JOSEPH A. BLEDSOE, III
N.C. State Bar No. 19817
jbledsoe@biggslawnc.com
LAURIE B. BIGGS
N.C. State Bar No. 31845
lbiggs@biggslawnc.com
Biggs Law Firm, PLLC
9208 Falls of Neuse Road, Suite 120
Raleigh, NC 27615
(919) 375-8040
Attorneys for Debtor

**McGeachy Holdings, LLC**
**Exhibit A - Liabilities**

| Unclassified Claims | Clm No | Amount |
|---|---|---|
| **Administrative Claims** | | |
| Biggs Law Firm, PLLC, atty for Debtor | | TBD |
| Kathleen O'Malley, Subchapter V Trustee | | TBD |
| | | |
| **Priority Tax Claims** | | |
| Cumberland County | | $ 53,362.46 |
| | | |
| **Class 1: Priority Claims** | | |
| None | | |
| | | |
| **Class 2: United Bank** | | |
| Loan 1 | | $ 482,725.46 |
| Loan 2 | | $ 257,901.58 |
| Loan 3 | | $ 225,039.00 |
| | **Total:** | **$ 965,666.04** |
| | | |
| **Class 3: First Citizens Bank** | | |
| Judgment | | $ 289,201.25 |
| | | |
| **Class 4: Landfall Condominium HOA** | 1 | $ 2,849.57 |
| | | |
| **Class 5: Crossings at Morganton HOA** | | |
| Claim of Lien 1 | | $ 4,210.85 |
| Claim of Lien 2 | | $ 4,210.85 |
| | **Total:** | **$ 8,421.70** |
| | | |
| **Class 6: Wynncrest HOA** | | Unknown |
| | | |
| **Class 7: General Unsecured Claims** | | |
| Bank of America | | $ 10,000.00 |
| Chase Card Services | | $ 30,000.00 |
| United Bank | | $ 7,880.16 |
| | **Total:** | **$ 47,880.16** |
| | | |
| **Class 8: Equity Security Interests** | | |
| Donovan McGeachy | | 100% |

**McGeachy Holdings, LLC**

**Exhibit B - Liquidation Analysis**

| | Value | Lienholder | Amt. of Lien | Equity |
|---|---|---|---|---|
| 1184 Wrenwood Ct. | $ 109,000.00 | Cumberland Co. | $ 1,694.70 | |
| | | United Bank | $ 482,725.46 | |
| 587 Winding Creek Rd. Unit D | $ 100,000.00 | Cumberland Co. | $ 1,419.86 | |
| | | United Bank | $ 482,725.46 | |
| 301 Warton Lane Apt. 9 | $ 167,500.00 | Cumberland Co. | $ 1,549.24 | |
| | | United Bank | $ 482,725.46 | |
| 1841 Tryon Dr. Unit 7 | $ - | Cumberland Co. | $ 1,067.79 | |
| (fire damage) | | United Bank | $ 482,725.46 | |
| 3323 Scotty Hill Rd. | $ 70,000.00 | Cumberland Co. | $ 1,873.22 | |
| | | United Bank | $ 482,725.46 | |
| 612 Marshtree Lane Unit 301 | $ 153,453.00 | Cumberland Co. | $ 1,683.67 | |
| | | United Bank | $ 482,725.46 | |
| | | Landfall HOA | $ 2,849.57 | |
| 573 Jennings Farm Rd. | $ 175,000.00 | Cumberland Co. | $ 2,319.58 | |
| | | United Bank | $ 482,725.46 | |
| 5026 Houston Road | $ 150,000.00 | Cumberland Co. | $ 2,046.77 | |
| | | United Bank | $ 482,725.46 | |
| | | **Net Equity Remaining:** | | **$ 425,723.14** |
| 571 Winding Creek Rd. Unit B | $ 100,000.00 | Cumberland Co. | $ 1,418.86 | |
| | | United Bank | $ 257,901.58 | |
| 114 Wynncrest | $ 275,000.00 | United Bank | $ 257,901.58 | |
| | | Wynncrest HOA | $ 4,320.00 | |
| | | **Net Equity Remaining:** | | $ 111,359.56 |
| 394 Oak Hill Lane | $ 170,000.00 | Cumberland Co. | $ 1,904.33 | |
| | | United Bank | $ 225,039.00 | |
| 7546 Branchwood Circle | $ 140,000.00 | Cumberland Co. | $ 4,426.96 | |
| | | United Bank | $ 225,039.00 | |

| | Value | Lienholder | Amt. of Lien | Equity |
|---|---|---|---|---|
| 301 Warton Lane, Unit 3 | $ 150,000.00 | United Bank | $ 225,039.00 | |
| | | Crosings HOA | $ 4,210.85 | |
| | | **Net Equity Remaining:** | | $ 224,418.86 |
| 3740 Owen Dr | $ 500,000.00 | Cumberland Co | $ 3,404.45 | |
| | | **Net Equity Remaining** | | $ 496,595.55 |
| Cybertruck | $ 75,000.00 | FCB | | $ 75,000.00 |
| TOTAL REMAINING EQUITY | | | | $ 1,333,097.11 |
| LESS First Citizens Bank Judgment Lien | | | | $ 289,201.25 |
| NET EQUITY REMAINING | | | | $ 1,043,895.86 |
| Less Costs of Sale | | | | |
| Chapter 7 Auctioneer Fees - Real Property | | | | |
| 10% of first $25,000 | | | | $ (2,500.00) |
| 6% of balance | | | | $ (134,097.18) |
| Ch 7 Trustee's Commission | | | | |
| 25% of first $5,000 | | | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | | | | $ (5,000.00) |
| 5% of next $50,000 to $1 million | | | | $ (47,500.00) |
| 3% of balance | | | | $ (37,798.59) |
| Administrative Claims of Chapter 7 professionals | | | | $ (5,000.00) |
| Chapter 11 Administrative Claims | | | | $ (25,000.00) |
| Priority Claims | | | | $ - |
| Total Equity for Unsecured Creditors | | | | $ 785,750.09 |

**Exhibit C - Projections of Income and Expenses**

| | Aug. 2026 | Sept. 2026 | Oct. 2026 | Nov. 2026 | Dec. 2026 | Jan. 2027 | Feb. 2027 | March 2027 | April 2027 | May 2027 |
|---|---|---|---|---|---|---|---|---|---|---|
| Starting Balance | $ 23,189.34 | $ 22,638.95 | $ 18,822.97 | $ 25,806.99 | $ 27,221.05 | $ 28,635.11 | $ 23,781.54 | $ 25,134.22 | $ 21,736.90 | $ 11,133.33 |
| 301 Warton Lane Apt. 9 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 |
| 587 Winding Creek Rd. Unit D | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| 5026 Houston Road | $ 1,750.00 | $ 1,750.00 | $ 1,750.00 | $ 1,750.00 | $ 1,750.00 | $ 1,750.00 | $ 1,750.00 | | | $ 1,800.00 |
| 573 Jennings Farm Rd. | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| 3323 Scotty Hill Rd. | $ - | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 | $ 1,200.00 |
| 1841 Tryon Dr. Unit 7 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 612 Marshtree Lane Unit 301 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 1184 Wrenwood Ct. | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| 394 Oak Hill Lane | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 | $ 1,500.00 |
| 7546 Branchwood - mobile | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| 7546 Branchwood - A | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | | |
| 7546 Branchwood - B | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 |
| 571 Winding Creek Rd. Unit B | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 | $ 1,300.00 |
| 114 Wynncrest | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 |
| 301 Warton Lane, Unit 3 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 | $ 1,350.00 |
| 3740 Owen Dr | $ - | $ - | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 | $ 4,000.00 |
| Total Income | $ 16,550.00 | $ 17,750.00 | $ 21,750.00 | $ 21,750.00 | $ 21,750.00 | $ 21,750.00 | $ 21,750.00 | $ 20,000.00 | $ 19,000.00 | $ 20,800.00 |
| Less Allowance for Vacancies | $ - | $ - | | | | | | | | |
| Available Cash | $ 39,739.34 | $ 40,388.95 | $ 40,572.97 | $ 47,556.99 | $ 48,971.05 | $ 50,385.11 | $ 45,531.54 | $ 45,134.22 | $ 40,736.90 | $ 31,933.33 |
| **Expenses** | | | | | | | | | | |
| Insurance - Foremost | $ 713.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 | $ 711.87 |
| Insurance - State Farm (land) | $ 955.11 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 | $ 772.70 |
| Insurance - Cyber Truck | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 | $ 184.41 |
| HOA dues | $ 2,046.00 | $ 2,046.00 | $ 2,046.00 | $ 2,046.00 | $ 2,046.00 | $ 2,107.38 | $ 2,107.38 | $ 2,107.38 | $ 2,107.38 | $ 2,107.38 |
| Maintenance | $ 4,900.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 | $ 2,750.00 |
| HVAC/Capital Repairs | $ - | $ 6,800.00 | | | | | | | | |
| Cleaning Costs | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 3,000.00 | $ 3,000.00 | $ - |
| Property Taxes | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total: | $ 8,799.39 | $ 13,264.98 | $ 6,464.98 | $ 6,464.98 | $ 6,464.98 | $ 6,526.36 | $ 6,526.36 | $ 9,526.36 | $ 9,526.36 | $ 6,526.36 |
| **Plan Payments** | | | | | | | | | | |
| Administrative Claims | $ - | $ - | | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 |
| Priority Tax Claims | $ - | $ - | | | | $ 3,812.24 | | | $ 3,812.24 | |
| Cls 2 - United Bank Note 1 | $ 8,301.00 | $ 8,301.00 | $ 8,301.00 | $ 3,293.04 | $ 3,293.04 | $ 3,293.04 | $ 3,293.04 | $ 3,293.04 | $ 3,293.04 | $ 3,293.04 |
| Cls 2 - United Bank Note 2 | | $ - | $ - | $ 1,759.34 | $ 1,759.34 | $ 1,759.34 | $ 1,759.34 | $ 1,759.34 | $ 1,759.34 | $ 1,759.34 |
| Cls 2 - United Bank Note 3 | | $ - | $ - | $ 1,535.16 | $ 1,535.16 | $ 1,535.16 | $ 1,535.16 | $ 1,535.16 | $ 1,535.16 | $ 1,535.16 |
| Cls 3 - First Citizens | $ - | $ - | $ - | $ 1,972.86 | $ 1,972.86 | $ 1,972.86 | $ 1,972.86 | $ 1,972.86 | $ 1,972.86 | $ 1,972.86 |
| Clas 4 - Landfall HOA | $ - | $ - | $ - | $ 56.76 | $ 56.76 | $ 56.76 | $ 56.76 | $ 56.76 | $ 56.76 | $ 56.76 |
| Class 5 - Crossings Assoc | $ - | $ - | $ - | $ 167.75 | $ 167.75 | $ 167.75 | $ 167.75 | $ 167.75 | $ 167.75 | $ 167.75 |
| Class 6 - Crossings Assoc | $ - | $ - | $ - | $ 86.05 | $ 86.05 | $ 86.05 | $ 86.05 | $ 86.05 | $ 86.05 | $ 86.05 |
| Class 7 - Unsecured Claims | $ - | $ - | $ - | $ - | $ - | $ 2,394.01 | $ - | $ - | $ 2,394.01 | $ - |
| Total Plan Payments | $ 8,301.00 | $ 8,301.00 | $ 8,301.00 | $ 13,870.96 | $ 13,870.96 | $ 20,077.21 | $ 13,870.96 | $ 13,870.96 | $ 20,077.21 | $ 13,870.96 |
| Net Cash | $ (550.39) | $ (3,815.98) | $ 6,984.02 | $ 1,414.06 | $ 1,414.06 | $ (4,853.57) | $ 1,352.68 | $ (3,397.32) | $ (10,603.57) | $ 402.68 |
| AVAILABLE CASH | $ 22,638.95 | $ 18,822.97 | $ 25,806.99 | $ 27,221.05 | $ 28,635.11 | $ 23,781.54 | $ 25,134.22 | $ 21,736.90 | $ 11,133.33 | $ 11,536.01 |

**Exhibit C - Projections of Incor**

| | | | | | | |
|---|---|---|---|---|---|---|
| Starting Balance | $ 11,536.01 | $ 17,938.62 | $ 18,140.51 | $ 23,195.69 | $ 44,238.36 | $ 69,618.69 |
| | **June 2027** | **July 2027** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| 301 Warton Lane Apt. 9 | $ 1,350.00 | $ 1,350.00 | $ 16,800.00 | $ 17,400.00 | $ 18,000.00 | $ 18,600.00 |
| 587 Winding Creek Rd. Unit D | $ 1,250.00 | $ 1,250.00 | $ 15,600.00 | $ 16,200.00 | $ 16,800.00 | $ 17,400.00 |
| 5026 Houston Road | $ 1,800.00 | $ 1,800.00 | $ 21,750.00 | $ 22,350.00 | $ 22,950.00 | $ 23,550.00 |
| 573 Jennings Farm Rd. | $ 1,500.00 | $ 1,500.00 | $ 18,600.00 | $ 19,200.00 | $ 19,800.00 | $ 20,400.00 |
| 3323 Scotty Hill Rd. | $ 1,200.00 | $ 1,200.00 | $ 14,400.00 | $ 15,000.00 | $ 15,600.00 | $ 16,200.00 |
| 1841 Tryon Dr. Unit 7 | $ - | $ - | $ - | $ 12,000.00 | $ 12,600.00 | $ 13,200.00 |
| 612 Marshtree Lane Unit 301 | $ - | | $ - | $ - | $ - | $ - |
| 1184 Wrenwood Ct. | $ 1,000.00 | $ 1,000.00 | $ 12,600.00 | $ 13,200.00 | $ 13,800.00 | $ 14,400.00 |
| 394 Oak Hill Lane | $ 1,500.00 | $ 1,500.00 | $ 18,600.00 | $ 19,200.00 | $ 19,800.00 | $ 20,400.00 |
| 7546 Branchwood - mobile | $ 1,250.00 | $ 1,250.00 | $ 15,100.00 | $ 15,700.00 | $ 16,300.00 | $ 16,900.00 |
| 7546 Branchwood - A | $ 1,050.00 | $ 1,050.00 | $ 12,700.00 | $ 13,300.00 | $ 13,900.00 | $ 14,500.00 |
| 7546 Branchwood - B | $ 1,000.00 | $ 1,000.00 | $ 12,000.00 | $ 12,600.00 | $ 13,200.00 | $ 13,800.00 |
| 571 Winding Creek Rd. Unit B | $ 1,300.00 | $ 1,300.00 | $ 16,200.00 | $ 16,800.00 | $ 17,400.00 | $ 18,000.00 |
| 114 Wynncrest | $ 2,300.00 | $ 2,300.00 | $ 28,200.00 | $ 28,800.00 | $ 29,400.00 | $ 30,000.00 |
| 301 Warton Lane, Unit 3 | $ 1,350.00 | $ 1,350.00 | $ 16,800.00 | $ 17,400.00 | $ 18,000.00 | $ 18,600.00 |
| 3740 Owen Dr | $ 4,000.00 | $ 4,000.00 | $ 48,000.00 | $ 49,440.00 | $ 49,440.00 | $ 49,440.00 |
| Total Income | $ 21,850.00 | $ 21,850.00 | $ 267,350.00 | $ 288,590.00 | $ 296,990.00 | $ 305,390.00 |
| Less Allowance for Vacancies | | | $ 26,735.00 | $ 28,859.00 | $ 29,699.00 | $ 30,539.00 |
| Available Cash | $ 33,386.01 | $ 39,788.62 | $ 258,755.51 | $ 282,926.69 | $ 311,529.36 | $ 344,469.69 |
| **Expenses** | | | | | | |
| Insurance - Foremost | $ 733.23 | $ 733.23 | $ 8,798.71 | $ 9,062.67 | $ 9,334.55 | $ 9,614.59 |
| Insurance - State Farm (land) | $ 795.88 | $ 795.88 | $ 9,550.57 | $ 9,837.09 | $ 10,132.20 | $ 10,436.17 |
| Insurance - Cyber Truck | $ 189.94 | $ 184.41 | $ 2,212.92 | $ 2,279.31 | $ 2,347.69 | $ 2,418.12 |
| HOA dues | $ 2,107.38 | $ 2,107.38 | $ 25,731.11 | $ 26,503.04 | $ 27,298.13 | $ 28,117.08 |
| Maintenance | $ 2,750.00 | $ 2,750.00 | $ 33,990.00 | $ 35,009.70 | $ 36,059.99 | $ 37,141.79 |
| HVAC/Capital Repairs | | | $ 12,000.00 | $ 12,360.00 | $ 12,730.80 | $ 13,112.72 |
| Cleaning Costs | $ - | $ - | $ 12,000.00 | $ 12,360.00 | $ 12,730.80 | $ 13,112.72 |
| Property Taxes | $ - | $ - | $ 28,553.00 | $ 28,553.00 | $ 28,553.00 | $ 28,553.00 |
| Total: | $ 6,576.43 | $ 6,570.90 | $ 104,283.32 | $ 107,411.81 | $ 110,634.17 | $ 113,953.19 |
| **Plan Payments** | | | | | | |
| Administrative Claims | | | $ - | | | |
| Priority Tax Claims | | $ 3,812.24 | $ 15,248.96 | $ 15,248.96 | $ 15,248.96 | $ 3,812.24 |
| Cls 2 - United Bank Note 1 | $ 3,293.04 | $ 3,293.04 | $ 39,516.48 | $ 39,516.48 | $ 39,516.48 | $ 39,516.48 |
| Cls 2 - United Bank Note 2 | $ 1,759.34 | $ 1,759.34 | $ 21,112.08 | $ 21,112.08 | $ 21,112.08 | $ 21,112.08 |
| Cls 2 - United Bank Note 3 | $ 1,535.16 | $ 1,535.16 | $ 18,421.92 | $ 18,421.92 | $ 18,421.92 | $ 18,421.92 |
| Cls 3 - First Citizens | $ 1,972.86 | $ 1,972.86 | $ 23,674.32 | $ 23,674.32 | $ 23,674.32 | $ 23,674.32 |
| Clas 4 - Landfall HOA | $ 56.76 | $ 56.76 | $ 681.12 | $ 681.12 | $ 681.12 | $ 681.12 |
| Class 5 - Crossings Assoc | $ 167.75 | $ 167.75 | $ 2,013.00 | $ 2,013.00 | $ 2,013.00 | $ 2,013.00 |
| Class 6 - Crossings Assoc | $ 86.05 | $ 86.05 | $ 1,032.60 | $ 1,032.60 | $ 1,032.60 | $ 1,032.60 |
| Class 7 - Unsecured Claims | $ - | $ 2,394.01 | $ 9,576.03 | $ 9,576.03 | $ 9,576.03 | $ 9,576.03 |
| Total Plan Payments | $ 8,870.96 | $ 15,077.21 | $ 131,276.51 | $ 131,276.51 | $ 131,276.51 | $ 119,839.79 |
| Net Cash | $ 6,402.61 | $ 201.89 | $ 5,055.18 | $ 21,042.68 | $ 25,380.32 | $ 41,058.02 |
| AVAILABLE CASH | $ 17,938.62 | $ 18,140.51 | $ 23,195.69 | $ 44,238.36 | $ 69,618.69 | $ 110,676.70 |