**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | **Chapter 11** |
| **MCGEACHY HOLDING LLC,** | : | |
| | : | **Case No.: 26-01995-5-JNC** |
| **Debtor.** | : | |
| | : | |

**UNITED BANK'S OBJECTION TO CONFIRMATION OF DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION**

United Bank ("United Bank"), a secured creditor, objects to confirmation of McGeachy Holding LLC's (the "Debtor") Chapter 11 Plan of Reorganization filed at Docket No. 64 (the "Plan"). United Bank rejects the Plan and requests that this Objection be treated as its rejection to the fullest extent permitted. In support, United Bank states as follows:

1. On May 1, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its assets and operates a rental-property business.

2. United Bank holds three commercial real estate obligations owed by the Debtor and secured by thirteen residential rental properties (collectively, the "United Bank Loans").

3. The first obligation is evidenced by a Commercial Promissory Note dated December 8, 2021, in the original principal amount of $252,700.00 ("Note 90042"). Note 90042 bears interest at 4.65%, requires fifty-nine monthly payments followed by a balloon payment, and matures on December 8, 2026. United Bank filed Proof of Claim No. 2 in the amount of $223,245.31.

4. The second obligation is evidenced by a Commercial Promissory Note dated October 24, 2023, in the original principal amount of $270,000.00 ("Note 94776"). Note 94776 bears interest at 8.00%, is amortized over 240 months, requires fifty-nine monthly payments followed by a balloon

payment, and matures on November 5, 2028. United Bank filed Proof of Claim No. 3 in the amount of $261,722.61.

5. The third obligation is evidenced by a Commercial Promissory Note dated December 13, 2023, in the original principal amount of $500,000.00 ("Note 94783," and together with Note 90042 and Note 94776, the "Notes"). Note 94783 bears interest at 8.25%, is amortized over 240 months, requires fifty-nine monthly payments followed by a balloon payment, and matures on December 13, 2028. United Bank filed Proof of Claim No. 4 in the amount of $485,916.15.

6. The aggregate amount asserted in United Bank's proofs of claim is $970,884.07, exclusive of postpetition interest, fees, costs, and expenses to which United Bank may be entitled.

7. The United Bank Loans are commercial obligations incurred to refinance and acquire investment real estate. They are not thirty-year, owner-occupied residential mortgages.

8. The deeds of trust securing the Notes cross-collateralize the Debtor's indebtedness to United Bank. The loan documents also grant United Bank assignments of leases and rents and include due-on-sale provisions, transfer restrictions, inspection rights, maintenance covenants, acceleration rights, application-of-proceeds provisions, and related remedies (collectively, the "Loan Documents").

9. The Plan classifies United Bank in Class 2, treats the class as impaired, and proposes to pay each obligation at 7.25% interest using a thirty-year amortization, with the remaining balance due with the 120th monthly payment.

10. The Plan therefore replaces obligations maturing in 2026 and 2028 with obligations amortized over thirty years and remaining outstanding for ten years after the Effective Date.

## OBJECTIONS TO CONFIRMATION

United Bank objects because the proposed thirty-year amortization and ten-year maturity are not fair and equitable. The Debtor's own budgets and Plan projections support materially greater debt service using a twenty-year amortization, with the unpaid balance due as a balloon no later than the sixtieth monthly payment and a maximum maturity of five years after the Effective Date. The Plan

also permits the Debtor's principal to occupy collateral without paying rent while seeking reduced payments to United Bank, fails to account for substantial delinquent real property taxes affecting the collateral, and does not provide adequate means for implementation. The Plan further fails to expressly preserve United Bank's rights under the Loan Documents. These defects prevent confirmation.

## A. THE PROPOSED THIRTY-YEAR AMORTIZATION AND TEN-YEAR MATURITY ARE NOT FAIR AND EQUITABLE

11. The Plan cannot be confirmed over United Bank's rejection unless the treatment of United Bank is fair and equitable. 11 U.S.C. §§ 1129(b)(2)(A), 1191(b).

12. The proposed treatment is not fair and equitable because the Plan does not establish that the deferred payments will provide United Bank with the present value required by 11 U.S.C. §§ 1129(b)(2)(A)(i)(II) and 1191(c)(1). United Bank made commercial real estate loans with contractual maturities in 2026 and 2028. The Plan would replace those obligations with loans amortized over thirty years and remaining outstanding for ten years after the Effective Date, materially extending United Bank's exposure to default, collateral deterioration, vacancy, refinancing, and interest-rate risk. Any confirmable treatment should calculate payments using no more than a twenty-year amortization, require the unpaid balance to be paid as a balloon no later than the sixtieth monthly payment, and provide a maximum maturity of five years after the Effective Date. The Debtor must establish through competent evidence that the proposed interest rate, amortization, maturity, collateral coverage, and other terms collectively provide United Bank the value required by the Bankruptcy Code.

13. The collateral consists of rental properties. The Debtor's Plan and budgets identify recurring insurance, association dues, maintenance, vacancy, tenant turnover, property damage, HVAC replacement, and casualty-related expenses. A thirty-year amortization leaves a greater principal balance outstanding while United Bank remains exposed to those risks.

14. The Debtor's asserted equity does not make the proposed treatment fair and equitable. Equity does not establish that a thirty-year amortization is necessary, compensate United Bank for a substantially extended credit relationship, or permit the Debtor to retain cash that its own projections show is available for debt service.

15. The proposed treatment has the practical effect of reducing the Debtor's monthly payment to United Bank and leaving additional cash under the control of the Debtor and its principal. The Plan does not show that the retained cash is required to fund operations or satisfy other Plan obligations. The Debtor may not extend United Bank's amortization to thirty years merely to increase the cash retained by the Reorganized Debtor while United Bank bears the resulting repayment and collateral risk.

16. The Plan therefore does not provide fair and equitable treatment of United Bank's secured claims and cannot be confirmed over United Bank's rejection.

**B. THE PLAN FAILS TO ACCOUNT FOR DELINQUENT REAL PROPERTY TAXES**

17. Upon information and belief, substantial real property taxes remain unpaid on properties securing United Bank's claims. United Bank's independent review identifies approximately $10,516.84 attributable to tax year 2024 and approximately $30,837.27 attributable to tax year 2025, for a total of approximately $41,354.11.

18. The Plan does not identify the affected parcels, state the amount of the delinquent taxes, classify or provide treatment for the resulting claims, establish the timing or amount of payment, or identify the source of funds that will be used to satisfy those obligations. The Plan projections likewise do not include a payment or reserve to cure the delinquent taxes.

19. The Plan also does not clearly state whether or how the Debtor intends to pay real property taxes accruing after confirmation. The Debtor must remain current on those obligations, but the Plan does not identify the amount to be paid or show that amount in its feasibility analysis.

20. The omission is material. The Debtor relies upon asserted equity in the properties and projected rental income to establish confirmability. The delinquent taxes must be paid in addition to the other obligations proposed under the Plan and affect both the net value of the collateral and the cash available for Plan payments.

21. If the delinquent taxes attributable to 2024 and 2025 are paid over five years, the Debtor must devote approximately $689.24 per month to that obligation, before penalties, interest, or other charges, calculated as follows:

| Delinquent real property taxes | Amount |
|---|---|
| Tax year 2024 | $10,516.84 |
| Tax year 2025 | $30,837.27 |
| **Total delinquent taxes** | **$41,354.11** |
| **Monthly payment over five years** | **$689.24** |

22. Without complete treatment of the delinquent taxes and a clear provision for taxes accruing after confirmation, the Court cannot determine the cash required to implement the Plan, the extent of any equity in the collateral, or whether the Debtor can perform all obligations required by the Plan. The Plan therefore fails to satisfy 11 U.S.C. §§ 1123(a)(5) and 1129(a)(11).

## C. THE DEBTOR'S OWN BUDGETS AND PLAN PROJECTIONS SUPPORT A TWENTY-YEAR AMORTIZATION

23. The Debtor's own budgets and Plan projections do not support the proposed thirty-year amortization. Those documents show that additional rental income has come online during the case and that further rental income is projected before or shortly after Plan payments commence.

24. The budget attached to the Second Interim Order Authorizing Use of Cash Collateral reflected $15,200.00 in monthly rent. The September 2026 budget attached to the Fifth Interim Order reflects that 301 Warton Lane, Unit 9 had been leased for $1,350.00 per month, increasing monthly rent to $16,550.00.

25. The Plan separately states that 3323 Scotty Hill Road will generate $1,200.00 per month after completion of turnover repairs and that 3740 Owen Drive will generate $4,000.00 per month after completion of HVAC work. If those projections are accepted, the Debtor will receive total monthly rental income of $21,750.00, calculated as follows:

| Projected monthly income | Amount |
|---|---|
| Rent reflected in September budget | $16,550.00 |
| Projected Scotty Hill rent | $1,200.00 |
| Projected Owen Drive rent | $4,000.00 |
| **Total projected monthly rental income** | **$21,750.00** |

26. The September budget identifies $1,458.00 in monthly insurance expense, $2,046.00 in monthly condominium and homeowners' association dues, and $4,200.00 in monthly maintenance expenses. Those maintenance expenses, as a projection for purposes of this argument, are generous considering the extensive repairs made in the last three months. The above expenses total $7,704.00 per month.

27. For purposes of testing the Debtor’s asserted need for a thirty-year amortization, applying an 8.25% rate and a twenty-year amortization to the aggregate petition-date claim balance of $970,884.07 produces an illustrative monthly principal-and-interest payment of approximately $8,272.57. This aggregate calculation does not determine the allowed amount, secured status, appropriate interest rate, or required payment for any individual United Bank Loan.

28. The Plan also proposes payments to First Citizens Bank and the secured condominium and homeowners' association claimants. The Plan further states that approximately $47,880.16 in Class 7 unsecured claims will be paid in full over five years. The stated payment of $798.00 per quarter does not accomplish that treatment. Payment in full of the Debtor's estimated Class 7 claims over five years requires approximately $2,394.00 per quarter, or approximately $798.00 per month. Payments of $798.00 per quarter would total only $15,960.00 over five years.

29. Using the Debtor's projected rental income, the operating expenses stated in the September budget, the Plan's proposed treatment of other creditors, the corrected Class 7 payment, a five-year payment of the delinquent 2024 and 2025 taxes, and a twenty-year amortization for United Bank produces the following monthly calculation:

| Projected monthly cash flow | Amount |
|---|---|
| **Total projected rental income** | **$21,750.00** |
| Insurance | ($1,458.00) |
| Ongoing condominium and HOA dues | ($2,046.00) |
| Maintenance | ($4,200.00) |
| United Bank, 20-year amortization at 8.25% | ($8,272.57) |
| First Citizens Bank payment, approximate | ($1,925.00) |
| Secured condominium and HOA claim payments, approximate | ($310.00) |
| Class 7 payment required to pay estimated claims in full | ($798.00) |
| Delinquent tax payment over five years | ($689.24) |
| **Projected monthly remainder** | **$2,051.19** |

30. This calculation accounts for the operating expenses stated in the September budget, the Plan’s proposed payments to other creditors, the amount required to pay the estimated Class 7 claims in full, and a five-year payment of the identified delinquent taxes. Subject to verification of the projected rents and omitted post-confirmation expenses, it indicates that the Debtor may have sufficient cash flow to service United Bank’s claims using a twenty-year amortization. At minimum, the calculation defeats any unsupported assertion that a thirty-year amortization is necessary and requires the Debtor to reconcile its projections with the feasibility and payment requirements of 11 U.S.C. §§ 1129(a)(11) and 1191(c)(3).

31. The calculation does not include a separate amount for real property taxes accruing after confirmation because the Plan does not state that amount or clearly explain how those taxes will be paid. The Debtor must provide that information, but the omission does not support a thirty-year

amortization where the Debtor's own projections otherwise show substantial additional revenue and positive cash flow under a twenty-year amortization.

32. The practical effect of the thirty-year amortization is to reduce the amount paid to United Bank and leave more of the projected rental revenue under the control of the Reorganized Debtor and its principal. The Debtor has not shown that the additional retained cash is necessary after accounting for the expenses, creditor payments, and delinquent-tax cure reflected above.

33. The foregoing calculation is not a concession concerning the allowed amount of any claim, the proper Effective Date balances, the appropriate interest rate, or the Debtor's ultimate feasibility. It demonstrates that the Debtor's own revenue and expense assumptions do not establish a need for a thirty-year amortization. If the Debtor relies upon the projected Scotty Hill and Owen Drive rents to establish feasibility, those same rents must be considered in determining the amount the Debtor can pay United Bank.

34. United Bank therefore objects to the thirty-year amortization and ten-year maturity because the Debtor has not demonstrated that the resulting payment stream, considered together with the proposed interest rate, collateral risks, and other Plan terms, provides the present value and fair-and-equitable treatment required by 11 U.S.C. §§ 1129(b)(2)(A) and 1191(c)(1). The Debtor's own projections indicate that materially greater monthly debt service is feasible, including debt service calculated using a twenty-year amortization. Any confirmable treatment must calculate payments using no more than a twenty-year amortization, require payment of the unpaid balance as a balloon no later than the sixtieth monthly payment, and provide a maximum maturity of five years after the Effective Date. It must also provide an interest rate supported by the evidentiary record, complete treatment of delinquent real property taxes, a clear provision for payment of taxes accruing after confirmation, and appropriate preservation of United Bank's liens and enforceable rights under the Loan Documents.

### D. THE DEBTOR'S PRINCIPAL OCCUPIES UNITED BANK COLLATERAL WITHOUT PAYING RENT

35. The Plan states that no income is projected from 612 Marshtree Lane, Unit 301 because the Debtor's principal presently occupies that property.

36. The September budget reflects no rent from Marshtree but includes $93.00 in monthly insurance and $418.00 in monthly association dues for the property. Marshtree therefore produces a negative monthly contribution before maintenance, taxes, and debt service.

37. The Debtor seeks reduced payments to United Bank while electing not to rent one of the properties securing United Bank's claims. The Debtor has not shown that the principal's continued occupancy is necessary to the Debtor's business or that the property could not generate rent.

38. The Debtor may not rely on reduced cash flow resulting from the principal’s rent-free occupancy of collateral while also asserting that all projected disposable income has been committed and that reduced debt service is necessary. If the Debtor contends that the Plan requires lower payments to United Bank, it must account for the fair rental value and carrying costs of Marshtree, explain why the principal’s occupancy is reasonably necessary for the continuation, preservation, or operation of the Debtor’s business, and demonstrate compliance with 11 U.S.C. §§ 1191(c)(2) and 1191(d).

### E. THE PLAN DOES NOT ADEQUATELY PRESERVE UNITED BANK'S CONTRACTUAL RIGHTS

39. The Loan Documents cross-collateralize the United Bank Loans and provide United Bank with assignments of leases and rents, due-on-sale rights, transfer restrictions, consent rights, inspection rights, maintenance covenants, acceleration rights, application-of-proceeds rights, and other remedies.

40. The Plan states only that the United Bank Loans “appear” to be cross-collateralized. The Plan also permits post-confirmation sales without Court supervision and directs how proceeds

from United Bank collateral will be applied. Those provisions do not adequately preserve United Bank's cross-collateralization, consent, transfer, and application-of-proceeds rights.

41. Any confirmable plan must clearly identify the provisions of the Loan Documents that will be modified and must preserve United Bank’s liens and assignments of rents to the extent required by 11 U.S.C. §§ 1129(b)(2)(A) and 1191(c)(1). The Plan must also state the conditions governing any sale, transfer, refinancing, or further encumbrance of the collateral; the application of resulting proceeds; the Debtor’s post-confirmation maintenance, insurance, tax, reporting, and payment obligations; and United Bank’s remedies following a post-confirmation default. Any modification of United Bank’s contractual consent, transfer, enforcement, or application-of-proceeds rights must be stated expressly and supported by the Bankruptcy Code and the confirmation record.

42. The Plan must also preserve United Bank's rights to postpetition interest, fees, costs, and expenses to the extent allowed under § 506(b), and it may not impose a cure period or limitation on enforcement that does not appear in the Loan Documents unless United Bank expressly agrees.

## F. THE PLAN DOES NOT PROVIDE ADEQUATE MEANS FOR IMPLEMENTATION

43. Section 1123(a)(5) requires adequate means for implementation. The Plan does not satisfy that requirement.

44. The Plan does not state the allowed amount or Effective Date Balance of each United Bank Loan, the resulting monthly payment for each loan, or an amortization schedule. It does not provide complete treatment of delinquent property taxes. It states a Class 7 payment that is mathematically insufficient to pay the estimated Class 7 claims in full. It also does not clearly preserve the Loan Document rights necessary to administer the United Bank Loans after confirmation.

45. These are not matters that can be left for post-confirmation calculation or dispute. The Plan must state the amounts to be paid, the timing and source of payment, the treatment of taxes and other claims, and the rights governing the collateral and the United Bank Loans after confirmation. Without those provisions, the Plan is not sufficiently definite to implement and cannot be confirmed.

**RESERVATION OF RIGHTS**

46. United Bank reserves the right to supplement this Objection, present evidence concerning valuation, interest rate, feasibility, rental income, expenses, taxes, and the condition of the collateral, respond to any amendment or modification of the Plan, and object to any proposed confirmation order.

47. Nothing in this Objection constitutes an election of remedies, consent to valuation or treatment, waiver of any lien or contractual right, acceptance of the Plan, or consent to any sale, transfer, use of rents, release, modification, or impairment. United Bank preserves all rights under the Loan Documents, the Bankruptcy Code, and applicable nonbankruptcy law.

**WHEREFORE**, United Bank respectfully requests that the Court deny confirmation of the Plan and grant such other and further relief as the Court deems just and proper.

This the 17th day of September, 2026.

**WOMBLE BOND DICKINSON (US) LLP**

/s/ Eudora F. S. Arthur
EUDORA F. S. ARTHUR
N.C. State Bar No. 59854
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Telephone: (919) 755-2178
Email: dorie.arthur@wbd-us.com
*Attorneys for United Bank*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 17, 2026, the foregoing was filed using the Court's CM/ECF system, which will provide electronic notice to all counsel and parties registered to receive such notice in this case, including counsel for the Debtor, the Subchapter V Trustee, and the Bankruptcy Administrator.

The undersigned further certifies that a copy of the foregoing was served by first-class mail, postage prepaid, upon the Debtor at the address appearing in the Court's records.

/s/ Eudora F. S. Arthur
Eudora F. S. Arthur